IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GASTON JOHNSON SMITH                                                      PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:17CV63-DAS

COMMISSIONER OF SOCIAL SECURITY                                           DEFENDANT


MEMORANDUM OPINION

Gaston Johnson Smith has appealed the decision of the Social Security Administration denying his application for Social Security disability or SSI benefits. Smith is appealing the denial of his fourth application for disability benefits since 2004. The ALJ determined that Smith's uncontrolled diabetes and hypertension were severe impairments, but that he was nevertheless able to perform a full range of medium work. The ALJ further found Smith was unable to return to his past employment as a heavy truck driver because federal regulations bar insulin-dependent diabetics from this work. Though the ALJ found that Smith was suffering from two severe nonexertional impairments, rather than relying on a vocational expert, the ALJ determined at Step Five that Smith was not disabled pursuant to the Medical-Vocational Guidelines. The plaintiff argues there were multiple errors in the decision.

STANDARD OF REVIEW

A claimant has the burden of proving he suffers from a disability, which the Social Security Act defines as a mental or physical impairment, lasting at least a year, that precludes him from substantial gainful activity. The relevant analysis proceeds in five steps: the Commissioner considers whether (1) the claimant is currently engaged in

1

substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. 20 C.F.R. § 404.1520; *Masterson v. Barnhart,* 309 F.3d 267, 271 (5th Cir. 2002). If the claimant survives the first four stages, the burden shifts to the Commissioner on the fifth step to prove the claminat's employability, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). A finding at any step that the claimant is not disabled ends the inquiry. *Chaparro v. Bowen*, 815 F.2d 1009, 1010 (5th Cir. 1987).

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. The court must however, in spite of its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## THE ALJ'S DECISION

In the decision denying benefits, the ALJ found the claimant had not engaged in substantial gainful activity since July 27, 2012, the alleged date of onset of disability. At Step Two, the ALJ, found the claimant's uncontrolled hypertension and uncontrolled diabetes were severe impairments.

After examining the medical source statement from his treating physician that found Smith had no physical, environmental, postural, or psychological limitations, the ALJ found that Smith had the residual functional capacity to perform a full range of medium work. The treating physician opined Smith had no pain and no limitations in his ability to sit, stand, walk, or any need for unscheduled work breaks. He suffered from no tenderness, spasms, sensory loss, muscle weakness, musculoskeletal issues, limitation on range of motion, or abnormal gait. His treating physician thought he could sustain full time work. Other than a legal restriction on truck driving, the treating physician did not

suggest any functional limitations arising from either the hypertension or diabetes mellitus.

The plaintiff claimed in his testimony that his severe conditions impacted his ability to lift, stand, reach, walk, remember, complete tasks, concentrate, understand instructions, and use his hands, but the ALJ found that these complaints were not supported by the evidence in the record. With regard to his diabetes, the ALJ noted that the treatment records showed a diagnosis of diabetic neuropathy based on the plaintiff's subjective complaints. The ALJ noted the diagnosis was not established by objective testing and that the objective findings on physical examination were inconsistent with neuropathy. Additionally, there was no evidence of end organ damage.

As with his diabetes, Smith's hypertension was uncontrolled and for the same reason—Smith's noncompliance with prescribed treatment and medications. The ALJ rejected the plaintiff's suggestion that his noncompliance was because of his limited finances. Again, there was no evidence of any end organ damage or ongoing complaints secondary to the hypertension.

At Step Four, based upon the treating physician's notation that Smith was legally barred by federal regulations from being licensed as a heavy truck driver because he is insulin-dependent, the ALJ found that Smith could not return to his past relevant work

Finally at Step Five, relying solely on the Medical-Vocational Guidelines, the ALJ found that Smith was not disabled. Though Smith moved from the "closely approaching advanced age" into the "advanced age" category during the pendency of his claim and had only a limited education, with his residual functional capacity to perform the full range of medium work, the Medical-Vocational Guidelines dictate a finding of "not disabled,"

regardless of the change in age categories. 20 CFR 404.1569, 404.1569(a) and 416.969(a). Medical Vocational Rule 203.19 and 203.12

## ANALYSIS

### 1. The First Four Assignments of Error

While the plaintiff has raised five issues in his brief, the court finds that each of the first four assignments of error is either without merit or that any error is harmless. These assignments need only be addressed briefly.

The plaintiff first asserts that the ALJ erred in making his credibility determination. The court finds the credibility determination was supported by substantial evidence and not erroneous. The ALJ found that the plaintiff left his employment because the employer closed. This finding is not erroneous because the plaintiff testified to a dual reason for his leaving work—that the employer closed and that he was sick. The ALJ also considered Smith's receipt of unemployment benefits as weighing against his credibility.

The plaintiff argues the ALJ improperly found that his failure to take medications as prescribed was not because of his inability to pay. However, the plaintiff failed to meet the burden of showing he was unable to pay or obtain low cost alternatives. The ALJ also noted unnecessary expenditures established by the record, indicating the plaintiff had other priorities. Additionally, the ALJ properly found that the failure to treat his illnesses reduced his credibility concerning the severity of symptoms Smith reported in his testimony.

Next, Smith alleges the ALJ created an RFC without the benefit of any opinion from a treating or examining source. He argues that his treating physician's act of

5

marking "N/A" by different questions about the plaintiff's capabilities and limitations should not be construed to indicate that the doctor was opining the plaintiff had no limitations. The ALJ interpreted the marking of "N/A" on the checklist of limitations as the doctor's opinion that the plaintiff did not have that limitation. The ALJ's interpretation is the obvious one and cannot on the record be said to be erroneous. The court also finds there was no error in the related argument that the ALJ should have ordered a consultative examination. Because the medical source statement from Smith's treating physician provides substantial evidence to support the ALJ's decision, no consultative examination was necessary.

2. Reliance on the Medical-Vocational Guidelines

The plaintiff's fifth assignment of error is more problematic. The plaintiff asserts that the ALJ erred, when instead of calling a vocational expert, he relied exclusively on the Medical-Vocational Guidelines, commonly called the Grids, to determine that Smith was not disabled. The plaintiff argues the ALJ's Step Two finding that Smith had severe nonexertional impairments precludes reliance on the Grids.[1] As discussed *infra*, there are cases that can be interpreted to hold that when a non-exertional impairment is found to be severe at Step Two, then an ALJ may not rely on the Grids at Step Five. The Commissioner counters that use of the Grids is not error in this case because the plaintiff makes no substantive claim regarding any work-related functional limitations arising from his nonexertional impairments that are supported by credible evidence. Notwithstanding

---

[1] Nonexertional impairments are those impairments that neither worsen nor improve as the level of physical exertion changes and that tend to remain the same regardless of the level of exertion. 20 C.F.R. 404.1545(d), 20 C.F.R. Pt. 404 Subpt P. App. 2 § 200. Pain can be either nonexertional, if it is neither worsened or relieved by changing exertion levels, or if aggravated by increased exertion it can morph into an exertional limitation.

6

the Step Two severity determination, the Commissioner argues that in this case use of the Grids was appropriate.

As noted, where a claimant cannot return to his past work, at Step Five the burden of production shifts to the Commissioner. At this step, the Commissioner must determine the claimant's capacity to perform work and determine whether jobs exist in the national economy that the claimant can actually perform. "The first inquiry involves a determination of historic facts, and the regulations properly require the Secretary [now Commissioner] to make these findings on the basis of evidence adduced at a hearing." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). But the second inquiry involves the determination of "an issue that is not unique to each claimant — the types and numbers of jobs that exist in the national economy." *Id*. at 468. The Grids are a shorthand way of evaluating the claimant's vocational situation and are designed to eliminate the need to repetitively call vocational experts to produce the same proof regarding available jobs in those category of cases covered by the Grid rules.

The various Medical-Vocational Guidelines lay out matrices with specific vocational profiles depending on the age, education, work experience, and residual functional capacity of a claimant. Where a claimant fits precisely within one of the profiles, the Guidelines will either deem a claimant "disabled" or "not disabled," incorporating the Commissioner's institutional knowledge of the existence of jobs existing in the national economy within the various exertional categories. Properly applied, the Grids streamline the decision-making process, reduce administrative costs, and provide more consistent decision-making outcome for similar claimants.

However, the Commissioner's institutional knowledge regarding the availability of jobs is broken down in the Grid Rules only by the broad exertional categories sedentary, light, medium, heavy, or very heavy. Where the claimant has exertional or nonexertional limitations that restrict the claimant's RFC to less than the full range of jobs in an exertional classification, the Grids are inapplicable. Where the claimant cannot do the full range of work at an exertional level, the Grids are designed to provide *only* guidance and a framework for a decision, not a rule for decision, in the disability determination. When the Grids are not applicable because of significant exertional or non-exertional limitations, "other evidence" must be adduced by the Commissioner. In the Fifth Circuit Court of Appeals, the "other evidence" necessary to meet the Commissioner's Step Five burden, is limited to expert vocational testimony. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). Failing this proof, in cases involving significant nonexertional limitations, the decision denying a disability claim at Step Five is not supported by substantial evidence. Therefore, because there was no expert vocational testimony in the present case, if the Grid Rules are inapplicable, this case must be remanded.

Determining Whether the Grid Rules are Applicable

The law is clear that the mere presence of nonexertional impairments will not automatically preclude the application of the Grids. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); *White v. Astrue*, 239 Fed. Appx. 71, *2 (5th Cir. July 9, 2007) ("The mere existence of pain does not prohibit reliance on the Grid Rules where the ALJ finds that the pain will not significantly compromise a claimant's capacity for a full range of work."); *Hearne v. Barnhart*, 111 Fed. Appx 256 (5th Cir. 2004). The law is also clear that if

a claimant has a nonexertional limitation that "significantly limits" his ability to perform the full range of work at one of the exertional levels, the Medical Vocational Guidelines cannot be directly applied. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) ("Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity.")

What is unclear, however, is how an ALJ should determine whether a nonexertional limitation "significantly limits" a claimant from performing a full range of work and how a reviewing court should review such a determination.

One group of cases holds that a finding at Step Two of a severe nonexertional condition or illness is the equivalent of and mandates a finding at Step Five that the claimant has a nonexertional impairment that "significantly restricts" the plaintiff's ability to perform a full range of work at an exertional level, thus precluding application of the Grids. *Loza v. Apfel*, F.3d 378, 399 (5th Cir. 2000); *Hearne*, 111 Fed. Appx. at 257. (agreeing with plaintiff's argument that a non-exertional impairment found to be severe at Step Two precluded the ALJ from relying solely on the Grid Rules at Step Five). In this first group of cases, the Fifth Circuit imposes a per se rule that precludes the application of the Grid Rules if a nonexertional impairment is found to be severe at Step Two. Clearly in many -- perhaps most -- cases an impairment that is found to be severe at Step Two will logically lead to the decision at Step Five that the impairment significantly restricts a claimant's RFC. The question this court is considering is whether the Step Two determination logically, *necessarily, and always* determines the decision at Step Five and/or does the existing case law dictate this result.

A second group of cases consider the question at Step Five of "significant restriction" and look to see if the Step Five determination is supported by substantial evidence, without necessarily referencing the Step Two severity determination. *Watson v. Barnhart*, 288 F.3d 212, 216–17 (5th Cir. 2002). *Lawler v. Heckler*, 761 F.2d 195, n.2 (5th Cir. 1985) (directing commissioner to consider whether claimant's personality disorder was a nonexertional impairment that would further restrict the number of jobs the plaintiff could perform).

In one of this second category of cases, *Fraga v. Bowen*, 810 F. 2d 1296, 1304 (5th Cir. 1987), the claimant injured his back at work and testified to having constant pain in his back and pain that waxed and waned in one of his hips. The ALJ found that Fraga suffered from disk problems in his lower back, hypertension, and low back and right leg pain, but at Step Five found that the Medical-Vocational Guidelines directed a conclusion of "not disabled." The ALJ found that Fraga could perform a full range of light work and that his nonexertional pain limitations did not prevent him from performing all substantial gainful activity, nor did it significantly compromise his RFC. *Id.* at 1301.

On appeal, Fraga argued that because his pain was a nonexertional limitation, reliance on the Grids, rather than expert vocational testimony was error. The Fifth Circuit affirmed the use of the Grids in Fraga's case because the ALJ found that Fraga's pain was not severe enough to significantly restrict his functional capacity and that this finding was supported by substantial evidence.

There are additional cases similar to *Fraga* – cases in which a court found a nonexertional limitation to be severe but because that nonexertional limitation did not significantly affect the claimant's ability to perform the base of jobs she was otherwise

10

capable of performing, that decision could be affirmed. For example, in *Guillory v. Barnhart*, 129 F. Appx 873, 874 (5th Cir. 2005)(per curiam), the ALJ applied the Medical-Vocational Guidelines to find the claimant was not disabled. Guillory argued that because the ALJ found she had severe nonexertional limitations at Step Two, he could not utilize the Medical-Vocational Guidelines at Step Five. The court disagreed, however, and held:

> If those impairments do not have a significant effect on her residual functional capacity use of the Gird Rules is appropriate. The ALJ found that Guillory's nonexertional impairment did not significantly affect her ability to perform the base of jobs she was otherwise capable of performing given her age, education and exertional limitations.

*Id.*

In *White v. Astrue,* 239 Fed. Appx 71 (5th Cir. July 9, 2007) , at Step Two, the ALJ found that White had severe degenerative disease, post-traumatic back pain syndrome, cervical strain/sprain, and a meniscal tear in his left knee. However, the ALJ also found that despite its severity, the claimant's pain did not prevent him from performing a full range of light work. Consequently, because substantial evidence supported this finding, the court affirmed the ALJ's decision to use the Grid Rules and his finding that White was not disabled.

What is unclear, however, is why the court in *White* also cited *Hearne v. Barnhart* in the same decision for the proposition that "[a]n ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five." *White¸* 239 Fed. Appx. at *3. It appears that is precisely what the court did in *White*. There did not appear to be an argument in *White* that his pain was not severe. The argument centered exclusively around the contention that either it prevented him from performing a full range of light work or it did not. That is, either it significantly limited

his ability to perform the full range of work at one of the exertional levels or it did not. The ALJ found that it did not, and the court affirmed that decision because despite the finding of severity at Step Two, substantial evidence supported his decision as to the limiting effect and thus using the Grid Rules was appropriate.

### The Functions and Standards Applied at Step Two and Step Five

It bears repeating that in many cases surely the end result would be the same with or without a rule linking Step Two and Step Five determinations. But it appears to the court that there are different standards applicable for Step Two and for Step Five determinations, and that these steps perform different functions within the Commissioner's five step decisional process. The court, therefore, believes that in a limited number of cases -- this case being one such example -- substantial evidence may support both a finding that a nonexertional impairment is "severe" at Step Two, and that it nevertheless does not significantly restrict the claimant's RFC to perform a full range of work at an exertional level. To explain, the court looks to the different functions of these two steps in the decisional framework employed by the Commissioner.

The Commissioner's five step process provides a sequential decision making process to allow decision making at the earliest appropriate time. At Step Two this decision-making process provides for the elimination of the cases involving the most trivial physical or mental defects. Because this step eliminates claims based only on medical information and skips a vocational analysis, it employs a *de minimus* standard of severity. The *de minimus* nature of the standard is shown, not so much by the language of the current regulations, as it is shown by the history of the standard as set out in the predecessor regulations. While under the current regulations impairments are determined

12

to be "severe" or "not severe," the standard originally referenced looked to see if a claimant had a "slight neurosis, slight impairment of sight or hearing or other slight abnormality or combination of abnormalities." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). While the language was changed in the regulations, the actual standard to be used at Step Two has remained the same as did the intent to eliminate only those claims most clearly *not* involving disability. *Id.* at 1102-1103. ("The prevailing idea … is that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors. The fact finders are entitled to follow a sequential process that disposes of those cases at the early stage.") (quoting H.R. 3755, 98th Cong., 2d Sess., 130 Cong.Rec. 9821–39 (1984)). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *Newell v. Commissioner of Social Security,* 347 F.3d 541 (3rd Cir. 2003). In short, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* at 546.

In the Fifth Circuit, the standard enunciated by the *Stone* court is "[A]n impairment can be considered as *not* severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone* 752 F.2d at 1102 (emphasis added). It is significant that the definition is in the negative, signifying the minimal showing needed to proceed further in the decision-making process. It is not an individualized analysis of the impact of the claimant's impairment on the claimant's ability to perform work functions.

Therefore, Step Two functions as an early screening to identify and eliminate the frivolous. It functions as a "pass/fail" system, rather than attempting meaningful

13

evaluation of an impairment in any common sense meaning of the word severe. Thus, a finding of "severity" at Step Two functions to adjudicate that the claim is not baseless, frivolous, or otherwise clearly lacking in merit.

At Step Three, the decision-making matrix is designed to perform the inverse of Step Two — the identification and adjudication of those with such severe levels of impairment that they may be deemed disabled without vocational evaluation. The Listing of Impairments catalogs and defines a wide range of impairments, and where the medical and other proof precisely meet the criteria of a Listing, the claimant is deemed disabled. *Mershel v Heckler*, 577 F. Supp. 1400, 1405, n.15 (S.D.N.Y. 1984)(The Listing of Impairments … does not provide the exclusive definition of disability under the Act; it provides only a catalogue of 'automatic' disabilities.") At Step Four, the claimant's residual functional capacity is assessed and the ALJ decides whether a claimant's capacities allow a return to any past relevant work.

At the final step, if a claimant is unable to return to past work, the Commissioner must look at the claimant's residual functional capacity and make a vocational determination as to whether there are jobs available the claimant can perform, either by application of the Grid Rules or by taking expert vocational testimony. When considering the impact of nonexertional impairments, the Grids will apply so long as those impairments do not "significantly interfere" with the claimant's ability to perform a full range of work at an exertional level. *Loza,* 219 F.3d at 399. Thus the Step Five decision is based upon a fully developed record and considers all evidence in the case and all factors that may impact a claimant's ability to work: objective medical proof, subjective complaints, lay testimony, and typically detailed function-by-function reports assessing

14

the claimant's capacities and limitations by treating or other examining physicians. Therefore, Step Five, unlike Step Two, does not function as a screening process.

Additionally, the standard for Step Two determinations of severity of impairments is facially different from the announced standard for weighing whether nonexertional impairments will preclude application of the Grid Rules at Step Five. The first standard holds that any slight impairment that may impact any claimant's ability to work regardless of age, education, or work experience must be deemed severe. *Stone*, 752 F.2d at 1101. That is not the same thing as the individualized determination that should be made at Step Five where the ALJ must determine if a nonexertional impairment will significantly restrict that particular claimant's RFC to perform a full range of work at an exertional level. It appears to the court that with both differing functions and standards at these two steps that some claimants may have nonexertional impairments that meet the Step Two de minimus standard, but that nevertheless do not significantly limit a claimant's RFC at Step Five.

Turning to the present case, the plaintiff suffers from diseases which can be serious, even potentially life threatening if left untreated, but these illnesses are frequently found to be not severe or not to cause functional limitations.[2] Smith in his testimony claimed a mix of exertional and nonexertional limitations secondary to his illnesses. He

---

[2] In the now rescinded SSR 82-55, 1982 WL 31375 (Jan. 1, 1985) examples of non-severe impairments included hypertension without significant organ damage and diabetes mellitus, adult onset, where it was controlled by medication without significant end organ damage. While Smith's diabetes was uncontrolled based on lack of medical compliance, neither of his conditions had resulted in organ damage. SSR 14-2p, 2014 WL 2472008 (June 2, 2014) covers the evaluation of diabetes mellitus and notes that the disease can cause chronic hyperglycemia, diabetic retinopathy, cardiovascular disease, diabetic nephropathy and diabetic neuropathy. None of these serious complications, except the neuropathy, are referenced in Smith's records, and the ALJ found that he did not suffer from diabetic neuropathy based on other medical evidence in the record.

claimed that his illnesses impacted his ability to lift, stand, reach, walk, and use his hands. He claimed memory problems, trouble completing tasks, concentrating, understanding, and following instructions. The ALJ rejected all of these claims as not supported by the evidence before him. This finding is well supported by the medical evidence and has not been challenged on appeal.

The court also considers it important that the ALJ expressly found Smith's hypertension "does not preclude medium work." And the court further notes the plaintiff has not suggested how the hypertension has manifested as a functional limitation nor pointed to any medical evidence to support a finding of any related functional limitation.

Likewise, with Smith's diabetes, the ALJ found only subjective evidence of neuropathy and found that the objective medical evidence in the record was inconsistent with neuropathy. Specifically, the ALJ noted the objective findings on physical examination showed Smith had a normal gait, intact sensation, and full motor strength that demonstrated "the absence of any limiting neuropathic issues." The ALJ also noted that Smith, at times, had near normal blood sugar readings even when he was not on medication. The ALJ further noted the "record contains no opinion that suggests that the claimant is limited to less than medium work." Thus the one functional impairment suggested by the medical records related to Smith's diabetes — peripheral neuropathy — was rejected by the ALJ based on other substantial evidence in the record.

Because there is no credible evidence to suggest a significant functional limitation in the plaintiff's ability to perform a full range of medium work arising from either his hypertension or diabetes, the court finds that the ALJ's assessment of the Smith's RFC is supported by substantial evidence. Because Smith was able to perform a full range of

medium work, application of the Grid Rule in this particular case was not error. The decision of the Commissioner shall be affirmed. A separate judgment shall issue.

This the _____ day of _____, 2018.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE